Smith, J.
The first question for consideration in these four cases is,, whether the levy of taxes made by the board of control, mentioned in the pleadings in this case, and certified by it to the county auditor to be placed on the duplicate, waslegal and valid; and this depends in great degree upon the construction which is to be given to the statute providing for the establishment of such a board in this county, Rev. Stat. sec. 964 and post, and particularly of sections 999, 1000, 1003, 1004, 1005 and 1006.
By section 999 it is provided that “the board of control shall have final action and jurisdiction in all matters involving the expenditure of money, or in awarding of contracts, or the assessing or levying of taxes by the board of county commissioners. Every contract shall be awarded to the lowest responsible bidder, on his giving sufficient security for the performance of the same; but the board of control may rejectv all bids.”
“ Sec. 1000. No contract or release made, or liability incurred, nor appropriation or allowance, nor taxes levied or assessed by the board of county commissioners shall be valid and binding unless a majority of all the members of the board of control present, vote in favor thereof; and no contract-or release made, or liability incurred, nor appropriation or allowance made, which involves an expenditure of money to the amount of one hundred dollars or more, nor taxes levied or assessed, shall be approved by the board of control, until the next meeting after such matters or things come before said board, unless a majority of all the members vote for the same.”
“ Sec. 1003. The board of county commissioners shall, at each meeting of the board of control, present to the board, a true and accurate statement of all matters and things which have come before it, which involve an expenditure of money, or the awarding of contracts, or the assessing or levying of' taxes; and it shall also present to the board of control at its meetings, all bids on contracts, plans and specifications, and. *24 every paper or document that in any manner comes before said board by the provisions of this chapter.”
The foregoing sections, as they stand in the Revised Statutes, were a part of the original act establishing the board of control, passed March 13, 1872, (O. L. Vol. 69, 40), and with sec. 1004, which is brought into the revision in a different form, were the only ones which throw any light on the question under consideration. Section 1004, as it now stands, is as follows :
“ Sec. 1004. No action of the board of county commissioners in matters and tilings upon which the board of control is herein authorized to act, shall be valid or binding until the same has been passed upon and approved by said board of control, anything in the law of this state to the contrary notwithstanding.”
By these provisions of the original statute, we do not see that any power is given to the board of control, as to matters submitted to it by the board of county commissioners, other than simply to approve or reject. This was the “ final action and jurisdiction ” conferred by sec. 999 ; and gave to it the right, (for instance) wher*e the commissioners jhad made a levy of taxes, as they by the general law were authorized to do, and had submitted it to the board of control, as they were bound to do, the latter board could not, (so far as - we see), legally alter or change, but could only approve or reject it. In case it was rejected, it would seem to follow that it should be returned to the commissioners for new action, precisely as if a contract made by them had been rejected; their power to act de novo upon the subject matter not having been exhausted by one or more refusals of the board of control to approve of their action. But in either of such cases, viz : in that of the levy of taxes, as well as in the matter of a contract presented for approval, it would be manifestly right and proper*, and we think must have been the legislative intent, that when such rejection occurred, and particularly so of a proposition as to the levy of taxes, (absolutely necessary to the carrying on of the *25 •county affairs), that the board of control should officially advise the commissioners of its action and the reason therefor, that a different and more satisfactory one might be submitted for its approval.
But in the following year, viz: on May 5, 1873, (70 Ohio L. 294), the legislature saw proper to make other and further provisions as to the levy of taxes, pointing out, to some degree at least, the duties of the county auditor, the board of county commissioners, and of the board of control in regard thereto, doubtless with the purpose of correcting defects seen to exist in the original statute. What is now sec. 1005, points out the nature of the information the auditor was to furnish to the two boards; and he was also to give “an estimate of the money needed to pay all lawful (expenses of the county, and its several departments, offices and institutions for the twenty months following said first Monday of April, not exceeding one million dollars,” and directing the auditor how such estimate should be made by him. lie was also in said statement to furnish an estimate of the total percentage he deemed necessary to be levied in that year for paying the county expenses for twenty months; and also to report to what funds said total levy should, in his opinion, be apportioned as special levies. Then comes sec. 1006, as follows:
“ The several members of the two boards aforesaid, shall examine and revise said statements carefully, and ten days after said first Monday of April, the board of commissioners shall first meet and determine the total levy they deem necessary for that year, which they shall apportion to the several funds, but not higher, however, in total levy than that estimated by the auditor; and this action of theirs they shall transmit to the board of control for its approval, amendment or rejection, within the limits aforesaid.”
Hero, for the first time, is the power expressly conferred on the board of control, to amend or change the tax levy presented by the commissioners to it; and by sec. 1007 the same power is given to it to approve, amend or reject, the *26 subsequent apportionment of the collected taxes. But such amendment or approval must be “ within the limits aforesaid.”' That is, as we understand it, the total levy made, or the percentage fixed for raising “ money needed to pay all lawful expenses of the county, and its several departments, offices and institutions” (whatever these terms may mean), for the twenty months, is not to be higher than that estimated by the auditor, who was expressly limited in his estimate to the raising of not exceeding one million dollars for that purpose. But apparently “ within the limits aforesaid,” the board of control is authorized to approve or reject the proposition as it comes from the commissioners (fixing the total tax levy and the apportionment thereof to special levies), as a whole; or under the power of amendment given to it, to strike out any particular item, or to change the levy made for one purpose by adding thereto or deducting therefrom or by adding new items, or changing the percentage fixed by the commissioners. This would seem to be the fair meaning of the language used.
But suppose such amendment to be made, what is the next step ? Must this action of the board of control go back to the county commissioners for their action thereon, or may it legally be certified by the board of control to the auditor, to be by him placed upon the duplicate ?
This is a question not free from difficulty. It is manifest that the statute does not in terms provide, that when thus amended by the board of control, it is to be returned to the board of commissioners for its concurrence, or that the latter board has anything further to do with it. But notwithstanding such is the case, we are of the opinion that it must have been the intention of the legislature that the proposition, so altered, should be thus dealt with, and that without such concurrence, the levy as adopted by the board of control would not be valid; that when we look at all of the legislation on the subject, we must conclude that it was not the purpose of this law to deprive the board of county commissioners of all. real power and authority in the matter of the levy of taxes, the *27 apportionment thereof to the special levies, and the subsequent appropriation thereof under sec. 1007, and make it in effect but the medium by which the estimate of the county auditor, with the simple suggestions of the commissioners, should reach the board of control; and that it was not the intention of the legislature to give to the latter the exclusive right to decide as to these matters. Until the passage of the act in question, it had always been the policy and the law of the state, that to the board of county commissioners, in the several counties, was intrusted the power of levying taxes for county purposes, and that of making appropriations of the funds so levied, and of contracting on behalf of the county ; and when it was deemed expedient by the legislature to establish in this county a board of control, and by the original statute to give such board the right, simply to approve or disapprove the action of the commissioners on any particular matter as a whole, it did no more than this. There was no authority to amend such action, though unquestionably it must have been the intention, as we have said, that the board of control might indicate the character and nature of the objections, if it did not approve of the measure. When, therefore, the legislature at the next session gav$ to the board of control, the right to amend a tax levy proposed by the commissioners, we see no reason to believe that it was intended thereby to effect so radical a change in the powers of the board of commissioners as that now claimed, and practically to take from it all legislative authority in such matters, and make the board of control supreme therein. This construction is greatly strengthened by the uniform and unquestioned action and practice of both of these boards from the time of the passage of the law until the controversy which has recently arisen on the question.
It may be that the enactment of a law by one legislature is not calculated to throw much light on the construction to be given to á previously enacted law, unless it purports to be explanatory thereof, and thus to place a construction upon it, *28 which is binding as to future transactions. But it seems to us that the fact that the legislature in 1883, when evidently-seeking, by the establishment of a board of tax commissioners for this city, to place the same check and restriction upon the council in the levying of taxes for the city, that was imposed upon the board of county commissioners by the establishment of the board of control, enacted a law, identical in many respects, and almost a transcript of that regulating the levy of taxes in this county, and therein expressly recognized the duty of the tax commissioners to return their action as to the levy proposed by the council, to that body, and in the case of its rejection, with their reasons therefor; and further providing that a tax levied without the concurrence of the tax commissioners, and of the council, should be void, was providing the same course of procedure in the two cases, and that it is a legislative sanction and recognition of the doctrine, that in the case of the levy of county taxes, it must have the concurrence of both boards.
If this be so, the next question for determination is, whether either of the levies certified by the two boards to the auditor, received the concurrence of both of the boards, and is, therefore, valid.
The facts in the case are these: About July 23rd, 1890, (instead of prior to the first Monday of April of that year, as is expressly required by the law), the auditor of the county presented to the board of county commissioners his statement and estimate under the provisions of sec. 1005, fixing the total percentage of levy at 4.73 mills, and giving his opinion as to what funds said total levy should be apportioned to as special levies; and in this were special levies for the improvement of certain county roads, which by the legislature, at the previous session, had been authorized, (but not required), to be levied by the county commissioners, but which had not then been levied, and as to which the auditor at the time the law required his report to be made, could not have have had any knowledge whether or not such levies would in fact be made. The *29 •county commissioners acted upon this statement, estimate and apportionment of the auditor, and confirmed and adopted the same precisely as it stood, except that they struck off 20-100 of a mill from one levy, making, the total levy 4.53. This action was sent to the board of control September 9th, and on the 16th of the same month, said board approved the action of the commissioners, except that it reduced the levy for county fund from two mills to 1.90, the bridge levy from 30-100 to 20-100, rejected the total levy for building fund, 20-100, and added for county infirmary and sinking fund 75-100, making their total percentage for levy 4.88, being more than the estimate of the auditor. This action was reported to the county commissioners, who thereupon, on September 20, 1890, by resolution agreed to the levy as proposed and adopted by the board of control, except that they declined to concur in its action reducing the levy for the county fund and in omitting the building fund, and then by resolution notified the board of control thereof, and requested it to concur in their original action, fixing the levy for the county fund and the building fund. Thereupon the board of control, having received such notice from the commissioners, reconsidered all of its own action on the subject of the levy of taxes, and adhered to its former action as to the county and building funds, — struck out all the levies which had been originally proposed by the commissioners for county roads, (and which had once been agreed to by the board of control), and on September 30th, finally adopted a percentage and apportionment for county and building funds, which had not been agreed to by the county commissioners, and without any levy for any of the six county roads, but which was in other respects the same levy before reported to the commissioners and agreed to by them, and directed the levy thus attempted to be made by them, to be forwarded to the auditor, and this was done on October 1, 1890.
On the same day, October 1st, 1890, the county commissioners agreed toThe same levy for the county fund, and sent their order to the county auditor to place their levy on the *30 duplicate. The items in this were the same as those on the levy forwarded by the board of control, except that it also contained the original levy proposed for the six roads; and the percentage fixed by the board of control was 4.55, while that of the commissioners was 5.38 mills, which was considerably higher than the percentage fixed by the auditor.
Has there been an agreement by the boards as to either of these levies ? It is evident that to either as a whole, there has been no such agreement — either as to the total percentage, or to the different levies — and we are of the opinion that on the return to the board of control of the action of the commissioners, it had the right to reconsider its whole action, and to change the original proposition of the board of commissioners as it saw fit, and that having done so, it was to be returned to the county commissioners, and unless it received the concurrence of that board in the shape in which it was so returned, it was not a legal levy, and, therefore that neither of the levies made is valid — for that of the commissioners as to the six roads was not finally concurred in by the board of control. We find, however, that the act authorizing the levy for the Miami road (that represented by Rufus B. Smith, Esq.), expressly conferred upon the commissioners the right to make the levy for that road without the concurrence of the board of control, and they having done so, that such levy is legal and must be placed upon the duplicate.
All of the other levies being in our opinion illegal, as not having received the concurrence of both of these bodies, this finding disposes of the case before us; but in view of the exigency of the matter, and the necessity of an early and speedy settlement of the question of the levy of the" tax, we deem it not improper to indicate our opinion as to some of the questions argued to us in this case, and a settlement of which may lead to a more speedy and satisfactory agreement between the two boards.
1. We are of the opinion that when a statute, passed after the enactment of the general law under consideration, au *31 thorizes the commissioners to levy a tax for a county road “ in addition to all other taxes authorized to be levied,” or in words of like import, and probably without such words of addition, that the amouut thus authorized to be levied, is not to be taken into account by the auditor, or counted by the boards as making a part of the one million dollar limit.
2. That when such statute authorizes the levy of such a tax by the commissiomers, unless there are words therein which plainly exclude the board of control from any voice as to such levy, its concurrence is necessary to make the levy valid. The majority of the court fully concur with the decision of the Superior Court of Cincinnati in General Term, as announced by Judge Force, in the case of the State of Ohio ex rel. v. The Commissioners of Hamilton County, reported in 11th Law Bulletin, 274, the syllabus of which is as follows :
“ The statutes give the county commissioners general authority to construct bridges and roads, and provide that in Hamilton county the commissioners in exercising this authority shall not make any contract or payment without the approval of the board of control-. Local acts subsequently passed, authorize the commissioners of Hamilton county to construct certain designated bridges, roads and avenues.
“ Held: Such local acts are to be taken in connection with the sections of the general statutes concerning the board of control; and they do not authorize the commissioners to construct and pay, independently of the board of control, unless such acts so prescribe, expressly or by necessary implication.”